UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STANLEY TOLIN and EDWARD WALTON, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMBAC FINANCIAL GROUP, INC., ROBERT J. GENADER, and SEAN T. LEONARD,<br><br>                    Defendants. | No. 08 Civ. 11241 (CM)<br><br>ECF Case |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION OF THE COURT'S DECEMBER 23, 2009 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**

Peter C. Hein
Warren R. Stern
C. Lee Wilson
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

*Attorneys for Defendants*

January 6, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

POINT I:    DEFENDANTS RESPECTFULLY REQUEST THAT THIS COURT RECONSIDER ITS DECEMBER 23 ORDER, PARTICULARLY INSOFAR AS IT IS BASED ON ASSUMPTIONS OF FACT THAT ARE NOT PLED IN, OR ARE INCONSISTENT WITH THE ALLEGATIONS OF, THE COMPLAINT. .................................................. 2

POINT II:   IN ANY EVENT, WHETHER OR NOT THE COURT RECONSIDERS, THIS IS A CLASSIC CASE FOR CERTIFICATION PURSUANT TO SECTION 1292(B). ....................................................... 5

    A.  The Issue of Standing — Which This Court Referred to as "a question of first impression in the Circuit" — is a Controlling Question of Law. ................ 6

    B.  There are Substantial Grounds for Difference of Opinion ................................... 6

    C.  An Interlocutory Appeal Would Materially Advance the Ultimate Termination of the Litigation. ............................................................................ 10

POINT III:  IF THE COURT CERTIFIES ITS ORDER FOR INTERLOCUTORY APPEAL, THE COURT SHOULD STAY FURTHER PROCEEDINGS IN THIS LITIGATION PENDING RESOLUTION OF THE APPEAL. ..................... 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Case**                                                                                 **Page**

*Axel Johnson Inc.* v. *Arthur Andersen & Co.*,
  6 F.3d 78 (2d Cir. 1993) .................................................................................................. 6

*Catskill Dev., L.L.C.* v. *Park Place Entm't Corp.*,
  154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) ..................................................................... 2

*Doe* v. *New York City Dept. of Soc. Servs.*,
  709 F.2d 782 (2d Cir. 1983) ............................................................................................ 2

*Harris Trust & Sav. Bank* v. *Salomon Smith Barney*,
  530 U.S. 238, 120 S. Ct. 2180 (2000) ............................................................................. 6

*Holmes* v. *Securities Investor Protection Corp.*,
  503 U.S. 258, 112 S. Ct. 1311 (1992) ........................................................................... 10

*In re Chateaugay Corp.*,
  213 B.R. 633 (S.D.N.Y. 1997) ...................................................................................... 10

*In re Dynex Capital, Inc. Sec. Litig.*,
  2006 WL 1517580 (S.D.N.Y. 2006) ................................................................... 5, 11, 12

*In re Enron Creditors Recovery Corp.*,
  2009 WL 3349471 (S.D.N.Y. 2009) ................................................................... 1, 6, 7, 10

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007) .................................................................................. 7, 8, 9, 10

*Int'l Bhd. of Teamsters, et al.* v. *Daniel*,
  439 U.S. 551, 99 S. Ct. 790 (1979) ................................................................................. 6

*Klinghoffer* v. *S.N.C. Achille Lauro Ed Altri-Gestione*,
  921 F.2d 21 (2d Cir. 1990) ......................................................................................... 5, 6, 7

*Litzler* v. *CC Invs., L.D.C.*,
  362 F.3d 203 (2d Cir. 2004) ............................................................................................ 6

*McMahan & Co.* v. *Wherehouse Entm't, Inc.*,
  65 F.3d 1044 (2d Cir. 1995) ............................................................................................ 6

*Mohawk Indus., Inc.* v. *Carpenter*,
  130 S. Ct. 599 (2009) ...................................................................................................... 7

*O'Brien* v. *Avco Corp.*,
  309 F. Supp. 703 (S.D.N.Y. 1969) ................................................................................ 11

*Ontario Pub. Serv. Employees Union Pension Trust Fund* v. *Nortel Networks Corp.*,
  369 F.3d 27 (2d Cir. 2004) ................................................................................ 7 & n.4, 8, 10

**Page**

*Sequa Corp.* v. *GBJ Corp.*,
  156 F.3d 136 (2d Cir. 1998) ............................................................................................... 5

*Shrader* v. *CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ................................................................................................. 4

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital, Inc.*,
  531 F.3d 190 (2d Cir. 2008) ............................................................................................... 6

*Tolin* v. *Ambac Fin. Group, Inc.*,
  2009 WL 5061743 (S.D.N.Y. 2009) ........................................................................... passim

*Virgin Atlantic Airways, Ltd.* v. *Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ............................................................................................. 5

## Statutes

28 U.S.C. § 1292(b) ................................................................................... 1, 5, 6, 7, 11, 12

## Other Authorities

Charles A. Wright et al., 16 Fed. Prac. & Proc. Juris. 2d § 3929 (2004) ........................... 11

Charles A. Wright et al., 16 Fed. Prac. & Proc. Juris. 2d § 3930 (2004) ........................... 11

## PRELIMINARY STATEMENT

Defendants Ambac Financial Group, Inc. ("Ambac'), Robert Genader, and Sean Leonard submit this memorandum in support of their motion for reconsideration of the Court's Opinion and Order dated December 21, 2009 and entered on the Court's docket on December 23, 2009 (the "December 23 Order") or, in the alternative, for certification of the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

This case presents a classic case for certifying a § 1292(b) appeal. First, the case involves a discrete, but controlling legal question that, as this Court has recognized, is "a question of first impression in this Circuit": whether "purchasers of a derivative securities product" are barred from "bringing a 10(b)(5) action against the issuer of the securities that were bundled by a second issuer to create the derivative?" *Tolin* v. *Ambac Fin. Group, Inc.*, 2009 WL 5061743, at *1 (S.D.N.Y. 2009) (slip op. at 1). "When a controlling question of law presents an issue of first impression, permission to appeal is often granted." *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *6 (S.D.N.Y. 2009) (McMahon, J.) (granting leave to appeal a bankruptcy court decision involving a question of first impression to the district court, applying § 1292(b)). Second, reversal of the December 23 Order on the issue of standing would terminate this case, prior to expensive and time-consuming discovery and other proceedings that will burden both the parties and the Court.

## BACKGROUND

On January 20, 2009, plaintiffs filed an amended complaint alleging violations of the federal securities laws by Ambac, Genader, and Leonard. Plaintiffs are purchasers of STRATS: "Structured Repackaged Asset-Backed Trust Securities, Callable Class A Certificates, Series 2007-1, STRATS(SM) Trust for Ambac Financial Group, Inc. Securities, Series 2007-1." Amended Class Action Complaint ("Compl.") at p.1. The STRATS were sponsored by a subsidiary of Wachovia, Synthetic Fixed-Income Securities Inc. ("SFIS"), were issued on June 29, 2007, and the STRATS Trust was funded by debt securities ("DISCS") issued by Ambac in February 2007. Compl. ¶¶ 9, 45-47. The DISCS "are unsecured subordinated debt instruments"

(Compl. ¶ 42), backed by Ambac's corporate credit. *See infra* Point I. The Complaint does *not* allege that Ambac was involved in the issuance of the STRATS, the Complaint does *not* allege that Ambac benefited from the issuance of the STRATS, and the Complaint does *not* allege that Ambac was even aware of the issuance of the STRATS (*cf.* Compl. ¶¶ 45-49). *See infra* Point I. To the contrary, the Complaint alleges that the DISCS used to fund the STRATS Trust were purchased "by Wachovia in the open market" (Compl. ¶ 46) — not directly from Ambac.

Defendants moved to dismiss the complaint for, among other reasons, lack of standing. In the December 23 Order, this Court denied defendants' motion to dismiss. *Tolin*, 2009 WL 5061743. This Court noted that the standing issue was one of first impression in this Circuit (*id.* at *1 (slip op. at 1)), but held that the "relationship between Ambac's disclosures and the STRATS" was not sufficiently "remote" as to deny plaintiffs standing. *Id.* at *10 (slip op. at 19).

## ARGUMENT

**POINT I:  DEFENDANTS RESPECTFULLY REQUEST THAT THIS COURT RECONSIDER ITS DECEMBER 23 ORDER, PARTICULARLY INSOFAR AS IT IS BASED ON ASSUMPTIONS OF FACT THAT ARE NOT PLED IN, OR ARE INCONSISTENT WITH THE ALLEGATIONS OF, THE COMPLAINT.**

"To prevail on a motion for reconsideration, the movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Catskill Dev., L.L.C.* v. *Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (McMahon, J.) (citing *Doe* v. *New York City Dept. of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

The Court's finding of standing is predicated on its conclusion that the "relationship between Ambac's disclosures and the STRATS is anything but remote." *Tolin*, 2009 WL 5061743, at *10 (slip op. at 19). The Court, however, premised this conclusion on a number of factual assumptions that are not pled in, or that are inconsistent with the allegations of, the Complaint.

First, in the December 23 Order, the Court relies on the assertion that the "Ambac-issued DISCS are asset-backed securities." *Id.* at *3 (slip op. at 5). But the Complaint made no such allegation. As the Complaint alleges, Ambac's DISCS are "unsecured subordinated debt instru-

2

ments" (Compl. ¶ 42) — essentially unsecured corporate bonds — and are backed by Ambac's corporate credit, *not* by securitized assets of any sort (such as mortgages, RMBS, CDOs, or Ambac's guarantees). The prospectus pursuant to which Ambac issued the DISCS in February 2007 states, consistent with the Complaint, that the DISCS are "unsecured, subordinated debt instruments." *See* Cover Page of Form 424(b)(5), Prospectus Supplement for the Ambac DISCS (filed February 8, 2007) (available on the SEC's EDGAR website at: http://www.sec.gov/Archives/edgar/data/874501/000119312507024346/d424b5.htm) (Exhibit B).[1]

Second, the December 23 Order relies on the assumptions that Ambac was "the 'sponsor'" (*Tolin*, 2009 WL 5061743, at *3 (slip op. at 6)); that Ambac "originate[d] or acquire[d] . . . the DISCS" and "s[old] those assets to . . . SFIS/Wachovia" (*id.*); that Ambac "benefited by passing off its risk to the investing public, while being paid handsomely for doing so" (*id.* at *10 (slip op. at 19)); and that the STRATS were issued "for the benefit of Ambac" (*id.*). But again, the Complaint makes no such allegations. To the contrary, the DISCS securities that collateralized the STRATS were *not* sold to Wachovia/SFIS by Ambac, but according to the Complaint, "were purchased by Wachovia *in the open market*." Compl. ¶ 46 (emphasis added). That it was Synthetic Fixed Income Securities, Inc., a wholly owned subsidiary of Wachovia (Compl. ¶ 45), that served as the sponsor for the STRATS is confirmed by review of the cover page of the STRATS prospectus supplement.[2] The Complaint does not allege that Ambac benefited from the issuance of the STRATS, received any money from the issuance of the STRATS, or that Ambac was even aware that the STRATS were being issued. The fact that Ambac raised funds when it issued approximately $400 million of DISCS in February 2007 (*see* Exhibit B) does not mean that Ambac in any way benefited from subsequent secondary market trading in the DISCS —

---

[1] For the Court's convenience, defendants have submitted the relevant portions of public record materials cited in herein as Exhibits in the accompanying Exhibits Binder.

[2] Available via the SEC's EDGAR website *at* http://www.sec.gov/Archives/edgar/data/1140396/000106823807000852/prossupp.htm (stating "Synthetic Fixed-Income Securities, Inc." is the "Depositor and Sponsor" for the STRATS) (Exhibit C).

3

including Wachovia/SFIS's purchase of perhaps $35 million of DISCS in the secondary market in order to create the STRATS (*see* ¶ 46; Exhibit C).

Third, the December 23 Order notes that the name of the STRATS included the words "for Ambac" (*Tolin*, 2009 WL 5061743, at *8 (slip op. at 16)) and sets forth the assumption that the STRATS were created at Ambac's "behest" (*id.*) or "for benefit of Ambac" (*id.* at *10 (slip op. at 19)). The official name of the STRATS trust at issue here, however, is: "STRATS(SM) Trust for Ambac Financial Group, Inc. Securities, Series 2007-1" (Compl. ¶ 45). Thus, the STRATS Trust was not "for Ambac," but for holding "Ambac Financial Group, Inc. Securities", *i.e.*, some of the DISCS issued in February 2007 which were thereafter purchased "in the open market" by Wachovia/SFIS (Compl. ¶ 46). Moreover, a review of the SEC's EDGAR website shows that STRATS trusts have been created by Wachovia/SFIS for the securities of a wide variety of companies, including Goldman Sachs, JP Morgan, Boston Scientific, AT&T, Boeing, Chrysler, IBM, Morgan Stanley, Wal-Mart, Allstate, and Proctor and Gamble to name a few.[3] Including "for Ambac . . . Securities, Series 2007-1" in the title of the STRATS is simply the nomenclature Wachovia/SFIS used to differentiate between the numerous STRATS Trusts that Wachovia/SFIS have created and does not establish Ambac's sponsorship or involvement in the issuance of the STRATS. Indeed, as indicated by their title "STRATS(SM)", the term STRATS has been registered as a protected service mark by **Wachovia**. *See* USPTO Trademark Search Results for the term "STRATS" (Exhibit D).

Set out in Exhibit A to this memorandum (in the accompanying Exhibits Binder) is a list of specific assumptions of fact and statements in the December 23 Order that defendants believe are not supported by or are inconsistent with the Complaint and ought to be reconsidered. Respectfully, these are "matters . . . that might be reasonably be expected to alter the conclusion reached by the [C]ourt." *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also*

---

[3] *See* EDGAR search results for "STRATS": http://www.sec.gov/cgi-bin/browse-edgar?company=strats&match=contains&CIK=&filenum=&State=&Country=&SIC=&owner=exclude&Find=Find+Companies&action=getcompany (Exhibit E).

*Virgin Atlantic Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing "clear error" as among the "major grounds justifying reconsideration"). Reconsideration is particularly appropriate where the factual assumptions the Court adopted were not advocated by either party. *Cf. Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (reversing denial of a motion for reconsideration of a judgment "where the district court adopted, after trial, a contractual interpretation advocated and anticipated by neither party," and thus "the parties had no occasion, as an initial matter, to present and address the [issue]").

In briefing on the motion to dismiss, defendants stated that there was no allegation that Ambac was involved in the issuance of the STRATS, that the Complaint alleged that the DISCS were unsecured debt, and that the Complaint alleged that Wachovia purchased the DISCS in the secondary market. *See* 4/15/09 Defendants' Moving Br. at 1-2. Plaintiffs did not dispute any of these matters (nor could they). Nor did plaintiffs urge, either as allegations in their Complaint or as assertions in their brief, various of the factual assumptions contained in the Court's order (as listed on Exhibit A in the accompanying Exhibits Binder). Accordingly, there was no occasion for defendants to address these matters further in the original briefing on the motion to dismiss, and reconsideration is thus appropriate.

**POINT II:    IN ANY EVENT, WHETHER OR NOT THE COURT RECONSIDERS, THIS IS A CLASSIC CASE FOR CERTIFICATION PURSUANT TO SECTION 1292(B).**

Even if this Court declines to alter its conclusion on the standing issue, this case would meet the criteria for interlocutory appeal. *See, e.g., In re Dynex Capital, Inc. Sec. Litig.*, 2006 WL 1517580 (S.D.N.Y. 2006) (denying motion for reconsideration but certifying for appeal). Section 1292(b) provides for certification of an order for interlocutory appeal when: (i) the order involves a "controlling question of law," (ii) as to which there is "substantial ground for difference of opinion," and (iii) "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Klinghoffer* v. *S.N.C. Achille Lauro Ed Altri-Gestione*, 921 F.2d 21, 23-25 (2d Cir. 1990).

The Second Circuit often hears interlocutory appeals in securities cases — in some cases

5

ultimately affirming the lower court's opinion (*e.g.*, *McMahan & Co.* v. *Wherehouse Entm't, Inc.*, 65 F.3d 1044 (2d Cir. 1995) (affirming in part); *Axel Johnson Inc.* v. *Arthur Andersen & Co.*, 6 F.3d 78 (2d Cir. 1993) (affirming)), and in other cases reversing or vacating the lower court's opinion (*e.g.*, *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital, Inc.*, 531 F.3d 190 (2d Cir. 2008); *Litzler* v. *CC Invs., L.D.C.*, 362 F.3d 203 (2d Cir. 2004). Indeed, even the Supreme Court of the United States has addressed issues that were originally heard by an appellate court after having been certified for interlocutory appeal pursuant to § 1292(b). *See, e.g.*, *Harris Trust & Sav. Bank* v. *Salomon Smith Barney*, 530 U.S. 238, 244, 120 S. Ct. 2180 (2000) (noting that the question of whether ERISA provides a private cause of action against nonfiduciaries who participate in a prohibited transaction was originally certified for interlocutory appeal under 28 U.S.C. § 1292(b)); *Int'l Bhd. of Teamsters, et al.* v. *Daniel*, 439 U.S. 551, 556-57, 99 S. Ct. 790 (1979) (noting that the question involved, whether particular financial interests constituted securities within the meaning of the Securities and Exchange Acts, was originally certified for interlocutory appeal under 28 U.S.C. § 1292(b)).

A. **The Issue of Standing — Which This Court Referred to as "a question of first impression in the Circuit" — is a Controlling Question of Law.**

The question of whether "purchasers of a derivative securities product" are barred from "bringing a 10(b)(5) action against the issuer of the securities that were bundled by a second issuer to create the derivative" is a discrete question of law. Moreover, it is clearly a controlling question of law: "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling' . . . it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. Here, a determination by the Second Circuit that plaintiffs lack standing to pursue a private securities action against defendants would terminate the action in its entirety.

B. **There are Substantial Grounds for Difference of Opinion.**

This Court has recognized that a decision that involves a question of first impression is likely to be an appropriate candidate for § 1292(b) certification. *See In re Enron Creditors Re-*

covery Corp., 2009 WL 3349471, at *6-*7 (S.D.N.Y. 2009) (McMahon, J.) (granting leave to appeal a bankruptcy court decision involving a question of first impression to the district court, applying § 1292(b) and citing the Second Circuit's decision in *Klinghoffer*, 921 F.2d at 24, which makes the same point). Indeed, the Supreme Court recently noted that "litigants confronted with a . . . novel . . . ruling" have the ability to request that a district court certify an interlocutory appeal under § 1292(b). *Mohawk Indus., Inc.* v. *Carpenter*, 130 S. Ct. 599, 602 (2009).

As the Court has noted, this case involves such "a question of first impression in this Circuit." *Tolin*, 2009 WL 5061743, at *1 (slip op. at 1): "does the Second Circuit's decision in [*Nortel*] bar the purchasers of a derivative securities product from bringing a 10(b)(5) action against the issuer of the securities that were bundled by a second issuer to create the derivative?"

In *Ontario Pub. Serv. Employees Union Pension Trust Fund* v. *Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004) ("*Nortel*"), the Second Circuit dealt with a situation where Company A was allegedly making false statements about Company A, which impacted the stock price of Company B. The Second Circuit held that shareholders of Company B lacked standing to bring a private Rule 10b-5 action against Company A. *Id.* at 34.[4] In *Nortel*, the Second Circuit did not dispute that shareholders of Company B had suffered harm due to Company A's misstatements, but held nonetheless that the considerations behind the Supreme Court's decisions to limit the scope of the Rule 10b-5 private right of action justified barring those shareholders from bringing suit. *See generally id.* at 32-33.

In *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ("*NYSE*"), the Second Circuit dealt with a situation where the NYSE provided a service to shareholders (*i.e.*, a market in which to trade their stock) and then made alleged misstatements about that service, which al-

---

[4] JDS Uniphase had agreed to sell a division of its business to Nortel for $2.5 billion in Nortel stock. At the time, Nortel was making public statements about Nortel's business (*e.g.*, that it was seeing strong demand), which resulted in Nortel's stock price rising, as well as JDS's stock price rising (because it was contractually due to receive a significant amount of Nortel stock). Subsequently, Nortel announced that it was cutting revenue estimates, and the price of both companies' stock fell. *Id.* at 29-30.

7

legedly impacted the shareholders' returns on purchases and sales of their securities.  *Id.* at 91-93.  In that situation, the Second Circuit held that *Nortel* did not inherently bar shareholders from bringing Rule 10b-5 action against the NYSE.  *Id.* at 102-103.  Notably, even in *NYSE*, the Second Circuit did not hold that plaintiffs *had* standing; the Second Circuit simply rejected the district court's rationale for holding that plaintiffs lacked standing, vacated that decision, and remanded for further proceedings.  In any event, the situation in *NYSE* was very different than that in *Nortel*, insofar as the NYSE was making public statements about the integrity of its system (the NYSE stock exchange) that facilitated the purchases and sales in which plaintiffs alleged they suffered losses.  *Id.* at 91-93.

*NYSE*, as defendants argued in both their moving and reply briefs before the Court (Defendant's 4/15/09 Moving Br. at 8; 5/22/09 Reply Br. at 1), simply stands for the proposition that non-issuer actors involved in a plaintiff's purchase or sale of a security (such as "underwriters, brokers, bankers, and non-issuer sellers," or in *NYSE*, the stock exchange facilitating the transaction) may face a private Rule 10b-5 action from the purchaser or seller directly injured by the underwriter's, broker's, bankers', non-issuer sellers', or stock exchange's actions in certain cases.  *Id.* at 102-03.  *NYSE* does not overturn *Nortel*'s holding, which defendants contend is more analogous to the instant case:  that plaintiffs who purchase securities issued by another company (the STRATS Trust), and who were only indirectly impacted by Ambac's actions (as a decline in the price of the Ambac DISCS may impact the price of the STRATS), lack standing.  By contrast, unlike plaintiffs here, the STRATS Trust itself was funded by DISCS purchased "in the open market" by Wahcovia/SFIS (Compl. ¶ 46) and thus the STRATS Trust may have standing if it claims to have suffered a direct injury from these direct purchases of DISCS — a claim that would already be in the consolidated class action pending against Ambac.

Defendants respectfully believe that there are grounds for a substantial difference of opinion as to whether this case is controlled by *In re NYSE*.  As the Supreme Court recognized in *Blue Chip Stamps*, when it determined that only purchasers or sellers have a right to maintain a private cause of action under Rule 10b-5, there will be participants in the securities markets who

8

suffer losses due to securities fraud but lack any direct redress. MB 8-9. That does not mean that such securities fraud will go unpunished; simply because plaintiffs may lack standing to pursue a private right of action does not mean that the SEC cannot bring an action. Here, the Court notes that the SEC regulations cited in its December 23 Order (*Tolin*, 2009 WL 5061743, at *9 (slip op. at 16)) permit an issuer of ABS to rely on the financial statements of the underlying issuer. But this does not show that purchasers of the ABS have the right to bring a private right of action against the underlying issuer as a remedy for purported wrongdoing — the regulations do not address that issue at all.

A characteristic of STRATS and the many ABS securities like them is that there *is* a direct purchaser involved who may have standing to pursue a private Rule 10b-5 claim — the STRATS Trust. Wachovia/SFIS allegedly purchased the DISCS "in the open market" for the Trust. Compl. ¶ 46. The Trust may thus already be a member of the putative securities plaintiff class in the class action, brought on behalf of purchasers of Ambac securities, and any recovery by the Trust as a class member may thus flow through to holders of the STRATS. Because of this, as defendants argued in their moving and reply briefs, allowing STRATS purchasers to bring a suit themselves may present the potential for double recovery from Ambac. Moving Br. at 9; Reply Br. at 1. This characteristic of STRATS and many other ABS is also why *In re NYSE* is not readily applicable here. *NYSE* stands for the proposition that a purchaser or seller who is transacting on the NYSE may potentially bring a claim against the NYSE for losses suffered in connection with the NYSE's misstatements regarding purchases and sales that the NYSE facilitates. Under *NYSE*'s holding, if a trust (like the STRATS Trust) or a mutual fund is purchasing or selling on the exchange, the *Trust* or *fund* would have standing to bring a claim against the exchange based on its purchases or sales. But *NYSE* says nothing about whether the purchaser of the STRATS securities (as distinct from the Trust itself) or the purchaser of mutual fund shares (as distinct from the mutual fund) would have standing.

This same complication, the possibility of double recovery, has been recognized by the Supreme Court in other contexts as making the indirect purchaser (here, the purchaser of the

9

STRATS securities) too remote from the cause of the injury to maintain a cause of action. For example, in *Holmes* v. *Securities Investor Protection Corp.*, 503 U.S. 258, 112 S. Ct. 1311 (1992), the Supreme Court rejected RICO claims against an alleged conspirator brought on behalf of securities customers, who were damaged when the alleged conspiracy rendered the customers' broker-dealers insolvent. The Court noted that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Id.* at 271-72. The Court stated that allowing the securities customers to bring suit, in addition to broker-dealers who had a direct claim, would require district courts to "have to find some way to apportion the possible respective recoveries by the broker-dealers and the customers, who would otherwise each be entitled to recover the full treble damages." *Id.* at 273.

Fundamentally, the proper application of *Nortel* and *In re NYSE* to ABS securities is a question of first impression and one for which there is substantial ground for difference of opinion as shown above. This is an issue that is appropriate for review and determination in the Court of Appeals.

C.  **An Interlocutory Appeal Would Materially Advance the Ultimate Termination of the Litigation.**

As noted above, if the court rules that plaintiffs lack standing to pursue a private cause of action against defendants, then the litigation will terminate. An interlocutory appeal that is potentially case-dispositive, like the one sought here, would advance the ultimate termination of this case in the most direct way possible. *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *7-*8 (noting that "applications for leave" to appeal "should be liberally granted where, as here, an appeal would facilitate the expeditious resolution of the case"); *In re Chateaugay Corp.*, 213 B.R. 633, 636 (S.D.N.Y. 1997) (granting interlocutory appeal from bankruptcy court where appeal could "dispose of the case").

This consideration weighs particularly heavily in favor of certification in this case, where the action is in its early stages. As indicated by the over 100 pages long complaint and year-and-a-half class period, as the matter goes forward it will undoubtedly require expensive, complex,

10

and time-consuming discovery, class certification hearings, summary judgment proceedings, and potentially even trial. It does not make sense to incur these costs when there is a novel legal question of first impression that will inevitably be argued upon appeal and that could resolve the case prior to the time and expense of further proceedings. *See* Charles A. Wright et al., 16 Fed. Prac. & Proc. Juris. 2d § 3930 (2004) ("[t]he advantages of immediate appeal increase with . . . the length of the district court proceedings saved by reversal of an erroneous ruling . . . [and] the substantiality of the burdens imposed on the parties by a wrong ruling").

And there are numerous other asset-backed securities in the market that are similar to the STRATS. STRATS are a product of Wachovia, and, as noted above, a search on the SEC's EDGAR website shows registration statements filed for STRATS issued for the securities of many companies.[5] Other investment banks have their own such products. As this Court noted, "new and complex financial instruments" are constantly evolving, *Tolin*, 2009 WL 5061743, at *9 (slip op. at 17), and the opportunity for an interlocutory appeal here will allow the Second Circuit to address an overarching legal issue of standing that has applicability not only here, but to other potential cases as well.

**POINT III:  IF THE COURT CERTIFIES ITS ORDER FOR INTERLOCUTORY APPEAL, THE COURT SHOULD STAY FURTHER PROCEEDINGS IN THIS LITIGATION PENDING RESOLUTION OF THE APPEAL.**

Section 1292(b) allows a district court to stay proceedings pending resolution of an application for an interlocutory appeal. *See* 28 U.S.C. § 1292(b). A stay is appropriate where "the determination of a preliminary question may dispose of the entire suit." *O'Brien* v. *Avco Corp.*, 309 F. Supp. 703, 705 (S.D.N.Y. 1969); *see also* Charles A. Wright et al., 16 Fed. Prac. & Proc. Juris. 2d § 3929 ("a stay may be appropriate if the certified order may dispose of the entire case without need for further proceedings"); *In re Dynex*, 2006 WL 1517580, at *3 (certifying denial of a motion to dismiss for interlocutory appeal and staying matter "pending resolution of the appeal" so long as "defendants make an application to the Court of Appeals within the 10 days al-

---

[5] *See supra* page 4 and note 3.

11

lowed").

As discussed above, this entire action would be dismissed if plaintiffs are determined to lack standing to pursue a private action against defendants.  Thus, it does not make sense for the Court and the parties to expend time and resources on discovery, class certification, and other proceedings, before resolution of the appeal.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court reconsider its December 23 Order or, in the alternative, certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Defendants respectfully further request that if the Court certifies the Order for interlocutory appeal, the Court stay further proceedings in this Court pending resolution of that appeal.

WACHTELL, LIPTON, ROSEN & KATZ

/s/  Peter C. Hein
Peter C. Hein (pchein@wlrk.com)
Warren R. Stern (wrstern@wlrk.com)
C. Lee Wilson (clwilson@wlrk.com)
51 West 52nd Street
New York, NY  10019
(212) 403-1000

*Attorneys for Defendants*

January 6, 2010